IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2013 APR 22  AM 9: 42

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
           DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § | CAUSE NO. A-12-CR-361-LY |
| MARCELINO AGUIRRE | § § | |

### MEMORANDUM OPINION AND ORDER GRANTING MOTION TO SUPPRESS

Before the court in the above styled and numbered cause of action are Defendant Marcelino Aguirre's Motion to Suppress filed December 9, 2012 (Doc. #22); the Government's Response in Opposition to Defendant's Motion to Suppress filed December 20, 2012 (Doc. #23); and the Government's Supplemental Response to Defendant's Motion to Suppress filed December 28, 2012 (Doc. #24). On December 28, 2012, the court commenced an evidentiary hearing on the motion, which recessed before completion and reconvened on February 19, 2013. Defendant Marcelino Aguirre filed a Memorandum of Points and Authorities on February 12, 2013 (Doc. #32). The Government filed a Memorandum of Points and Authorities in Opposition to Defendant's Motion to Suppress on February 13, 2013 (Doc. #33).

At the conclusion of the hearing on February 19, 2013, the court took the motion under advisement; the Government filed a Supplement to Government's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Suppress on March 22, 2013 (Doc. #40); and Defendant filed a Response to the Government's Supplemental Memorandum of Points and Authorities on March 27, 2013 (Doc. #41). The court observed carefully the demeanor of all who testified and has evaluated their credibility. The court has also carefully reviewed the video recordings that reflect the officers' movements at Aguirre's residence. After considering the motion

and all responses, memoranda, and supplements, and the evidence presented at the December 28, 2012 and February 19, 2013 hearings, the arguments of counsel, and the applicable law, the court finds that the motion to suppress should be granted for the reasons to follow.

## *Background*

On August 3, 2012, Sergeant Carlos Tynes, Sergeant Erik Hinterlach, Detective Mike Allen, Detective Kris Greenhill, and Deputy Kyle McConnell, all of the Caldwell County Sheriff's Office, and Ms. Robin Williams, an investigator with the Child Protective Services program of the Texas Department of Family and Protective Services, arrived at Defendant Marcelino Aguirre's residence to conduct a welfare check of children living in the residence, following reports that Aguirre and his girlfriend abused and neglected the children. The officers accompanied Williams to provide protection due to Aguirre's criminal history and reports of weapons use. Williams remained in her vehicle down the street from the residence, while the officers approached the residence to secure it before she arrived.

The officers approached Aguirre's residence and Tynes stepped onto the porch and knocked on the front door. Two other officers stood in the yard not far from the front porch. Aguirre either answered the door or came quickly to the door wearing boxer shorts and no shirt and with shaving cream on his face. Tynes told Aguirre that Williams wanted to speak with him.

Aguirre partially opened the door, acknowledged Tynes, and said that he needed to put on some clothes. Aguirre tried to shut the door, but Tynes pushed it open to maintain visual contact with Aguirre as he retreated into the residence to get dressed. Aguirre testified that when Tynes pushed the door open Tynes crossed the threshold of the doorway and stepped into the residence. Tynes testified that he entered only after he told Aguirre that Williams wanted to speak with him and

Aguirre said, "Okay." When Aguirre returned to the door after getting dressed, Tynes and McConnell were standing inside the residence.

Tynes stepped out of the residence, left the front porch, and walked into the yard to signal Williams to approach the residence. Williams entered the residence, followed by the remaining officers, who had until that point remained outside. Williams did not request to enter the residence, nor did Aguirre invite her inside or give her permission to enter. Aguirre sat down at a dining table with Williams and began to talk with Williams while the officers stood by in the same room. Aguirre answered Williams's questions and did not express a desire for Williams or the officers to leave the residence.

During Williams's interview with Aguirre, the officers noticed a .22 caliber rifle on top of china hutch in the same room. When asked about the rifle, Aguirre stated that he kept it for shooting snakes. As the interview between Williams and Aguirre continued, Williams asked Aguirre if he would let her look around the residence. Aguirre agreed to show Williams around, but not in the closets. Williams asked one or more of the officers to accompany her as Aguirre led Williams from room to room.

Williams asked if Aguirre would show her his vehicles so that she could see if he had child safety seats in them. Aguirre agreed and went outside with Williams and one of the officers. Aguirre opened one or more of the vehicles so that Williams could examine them. Aguirre did not have a key for one of the vehicles; he went back inside the residence to retrieve it.

When Aguirre reentered the residence, he told the officers, who were still inside, that he needed to go into the master bedroom area to look for his keys. Allen asked if he could accompany Aguirre, and Aguirre agreed. Allen followed Aguirre through the master bedroom and into the

3

master bathroom. Aguirre stepped into the master closet and emerged with a semi-automatic Bushmaster .223 caliber rifle, which Allen seized. Allen then directed Aguirre back out into the master bedroom and instructed Tynes and another deputy to detain Aguirre.

Without searching the residence, Allen left to apply for a search warrant. A Caldwell County magistrate issued a warrant that was executed that same day. Inside the residence, officers discovered more than 50 firearms. A three-count indictment was returned against Aguirre on September 18, 2012, for possession of a firearm by a felon, in violation of Section 922 of Title 18 of the United States Code.

## Analysis

It is undisputed that at the time the officers entered Aguirre's residence, the officers had no search warrant, nor had any officer applied for a warrant. Aguirre asserts that he did not consent to the officers' entry into his residence on August 3, 2012. "Pursuant to our Fourth Amendment law, '[w]arrantless searches of a person's home are presumptively unreasonable unless the person consents, or unless probable cause and exigent circumstances justify the search." *Gates v. Texas Dept. of Protective and Regulatory Services*, 537 F.3d 404, 420 (5th Cir. 2008) (quoting *United States v. Gomez–Moreno*, 479 F.3d 350, 354 (5th Cir. 2007)). Consent must be voluntary in order for it to validate an intrusion upon Fourth Amendment interests. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). Consent is determined based on the totality of the circumstances. *Gates*, 537 F.3d at 420 (citing *United States v. Freeman*, 482 F.3d 829-832 (5th Cir. 2007)). "[T]he standard for measuring the scope of . . . consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)).

When Aguirre came to the door of his residence, Tynes told him that someone from Child Protective Services needed to come in and talk with him. Aguirre responded by stating "okay" or "that's fine." However, Aguirre testified that he did not intend to allow the officers to enter his residence. There is no evidence that Tynes asked Aguirre if he or any other officer could enter Aguirre's residence, either with or without Williams.

In addition, Williams was not with Tynes when he knocked on Aguirre's door. When Aguirre first spoke with Tynes and south to leave Tynes's presence to put on his clothes Aguirre tried to close the door, but Tynes pushed the door open and told Aguirre that the door needed to be left open. When Tynes pushed the door open he stepped across the threshold and into the residence.

The Government asserts that Aguirre's acknowledgment of Tynes's request for Williams to speak with Aguirre, by responding with "okay" or "that's fine," amounted to consent for Tynes and the other officers to enter Aguirre's residence. The Government directs the court to several cases, including one from the Fifth Circuit, to support its argument. All of the cases cited, however, are distinguishable from this case.

In *United States v. Mendez*, the Fifth Circuit held that after the defendant consented to one agent entering and searching his residence, his consent applied to other agents who subsequently entered the defendant's residence. 431 F.3d 420, 427 (5th Cir. 2005). The facts in this case, however, raise an issue as to whether consent was given to the first officer to enter.

In *United States v. Garcia*, 997 F.2d 1273, 1277 (9th Cir. 1993), plain-clothed officers approached an apartment where the door was open, except for a closed screen door, and began speaking to the occupants through the screen door without identifying themselves. One of the officers asked the defendant if he could throw away an empty soda bottle. When the defendant

opened the screen door to take the empty bottle, officers grabbed the door to keep it from closing and identified themselves as police officers. *Id.* The defendant said "okay," nodded his head, and stepped back into the house and out of the doorway. *Id.* The Ninth Circuit held that, by saying "okay" and stepping into the room, the defendant consented for the officers to enter. *Id.* at 1281. In *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004), police knocked on a hotel room door and asked for permission to enter when the defendant opened it. The defendant did not reply, but "stepped back and cleared a path for the officers to enter." *Id.* The Sixth Circuit held that the defendant's actions constituted nonverbal consent. *See id.* at 588. Likewise, the Seventh, First, and Eighth Circuits similarly found nonverbal consent when the defendant opened the door and stepped aside or back into the residence so that a law-enforcement officer could enter. *See United States v. Griffin*, 530 F.2d 739, 743 (7th Cir. 1976); *Robbins v. McKenzie*, 364 F.2d 45, 48-49 (1st Cir. 1966); *United States v. Smith*, 973 F.2d 1374, 1375-76 (8th Cir. 1992); *United States v. Turbyfill*, 525 F.2d 57, 59 (8th Cir. 1975).

In this case, Aguirre's door was closed when the officers approached. In addition, after Aguirre agreed to speak with Williams, Aguirre attempted to close the door but was blocked by Tynes, who pushed open the door, stepped over the threshold, and entered the residence. Not only did Aguirre fail to verbally consent to the officers' entry into his residence, his attempt to close the door instead of stepping back to allow Tynes to enter cannot be construed as nonverbal consent. "[C]onsent to search must be 'voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.'" *Andrews v. Hickman County, Tennessee*, 700 F.3d 845, 854 (6th Cir. 2012) (quoting *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009)). "The burden to establish that the exception applies is on the officer invoking consent." *Id.* (citing *Bumper*

6

burden to establish that the exception applies is on the officer invoking consent." *Id.* (citing *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)).

The court concludes that, under the particular facts of the case, Aguirre's statement of "okay" or "that's fine" was nothing more than a response to Tynes's statement that Williams wanted to speak with Aguirre. The statement was not an invitation to or consent for Williams or any law-enforcement officer to enter Aguirre's residence. This conclusion is bolstered by the fact that not only did Aguirre not step aside to admit any officer, he actively tried to close the door to the residence, an action blocked by Tynes. The Government has failed to meet its burden of proving that Aguirre consented to Tynes's entry.

Neither was the officers' entry into Aguirre's residence justified by exigent circumstances. "[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). "Immediate safety risks to police officers and others are exigent circumstances that may excuse a warrantless entry into a residence." *Gates*, 537 F.3d at 421 (citing *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001)). Although the officers were tasked to escort Williams to ensure her safety, the Government has presented no evidence that Aguirre presented an immediate safety risk to law-enforcement officers or to Williams. Aguirre already had spoken with officers outside his residence on several other occasions without incident. The court finds that the officers' entry into Aguirre's residence was not justified by exigent circumstances.

It was only through the officers' original illegal entry into Aguirre's residence that the officers obtained a basis for the issuance of the later search warrant.

**IT IS THEREFORE ORDERED** that Defendant Marcelino Aguirre's Motion to Suppress (Doc. #22) is **GRANTED**.

**IT IS FURTHER ORDERED** that all items recovered and all evidence obtained as a result of the search of Aguirre's home are suppressed and the United States shall not be permitted to use such at trial.

SIGNED this 19th day of April, 2013.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE